IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STACY K. MARTIN, et al., § | |
| § | |
| Plaintiffs, § | |
| § Civil Action No. 3:14-CV-0500-D | |
| VS. § | |
| § | |
| LOCAL 556, TRANSPORTATION § | |
| WORKERS UNION OF AMERICA, § | |
| AFL-CIO, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this labor dispute arising from disciplinary actions against officers of a union local, defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and to strike plaintiffs' second amended complaint. The court must decide whether plaintiffs have adequately pleaded a claim under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401-531 ("LMRDA"). For the reasons that follow, the court grants in part and denies in part defendant's motion to dismiss under Rule 12(b)(6), and it denies its motion to strike.

I

This case is the subject of a prior opinion of the court. *Martin v. Local 556, Transp. Workers Union of Am., AFL-CIO*, 2014 WL 4358480 (N.D. Tex. Sept. 3, 2014) (Fitzwater, C.J.) ("*Martin I*"). The court will therefore recount only the background facts and procedural history that are pertinent to this memorandum opinion and order.

A

Plaintiffs Stacy K. Martin ("Martin"), Chris Click ("Click"), and Jerry Lindemann ("Lindemann") sue defendant Local 556, Transportation Workers Union of America, AFL-CIO ("TWU Local") seeking relief under the LMRDA. Plaintiffs are flight attendants employed by Southwest Airlines. They are also members of TWU Local, the local of the labor union that represents Southwest Airlines' flight attendants.[1]

In 2011 the top officers of the TWU Local Executive Board ("Executive Board") were Thom McDaniel, President; Michael Massoni, 1st Vice President; Martin, 2nd Vice President; Cuyler Thompson, ("Thompson"), Secretary; and John Parrott ("Parrott"), Treasurer. In October 2011, during four separate membership meetings, Click voiced his opposition to an amendment ("Amendment")[2] proposed by then-Secretary Thompson. TWU Local membership ultimately voted against the Amendment, in large part because of Click's opposition. Allegedly in retaliation for Click's opposition to and speech against the Amendment, and as a preemptive attempt to undermine Click's chances of being elected 1st

---

[1] In deciding TWU Local's Rule 12(b)(6) motion, the court construes plaintiffs' second amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[2] The Amendment, called "Project Redesign," would have replaced TWU Local membership meetings with delegate-style meetings during which members could neither vote nor speak but could only view union decisions.

Vice President position during the 2012 elections,[3] Thompson made charges that Click violated membership rights by telling members how to vote on the Amendment. Click was found not guilty of the charges.[4] Allegedly in further retaliation and attempt to prevent Click from running for election, however, Thompson and the then-board posted the results of Click's hearing on the union's website. This was the first time that hearing results had been posted on TWU Local's website, and plaintiffs allege it was clearly done in an attempt to "besmirch . . . Click's name" prior to the 2012 elections. 2d Am. Compl. ¶ 12.

In March 2012 two groups ran for the top officer positions in TWU Local. The first group—the "Lauck Group"—consisted of: Allyson Parker Lauck ("Lauck"), running for President; Audrey Stone ("Stone"), running for 1st Vice President; Brett Nevarez ("Nevarez"), running for 2nd Vice President; Thompson, running for reelection to the position of Secretary; and Parrott, running for reelection to the position of Treasurer. The second group—the "Martin Group"—consisted of: Martin, running for President; Click, running for 1st Vice President; Dawn Wann ("Wann"), running for 2nd Vice President; Jannah Dalak ("Dalak"), running for Secretary; and Lindemann, running for Treasurer. The Martin Group won the March 2012 election with 65% of the vote.

---

[3]Plaintiffs allege that, "at this same time," Click made it known that he intended to run for 1st Vice President during the next election. 2d Am. Compl. ¶ 9.

[4]Although Click was found not guilty of the charges, the trial committee stated that Click had inadvertently disclosed confidential information, but that this disclosure occurred mainly as a result of the way TWU Local voted on the Amendment, which consisted of a show of hands. The trial committee suggested that TWU Local adopt changes to prevent this from recurring.

Plaintiffs contend that, almost immediately after they took office in May 2012, members of the Lauck Group and TWU Local members who supported the Lauck Group embarked on a systematic dismantling of the union's electoral system and democratic structure by filing a barrage of unfounded charges against the newly-elected officers, simply as a means of harassing and disrupting the union's infrastructure and business.[5]

In November 2012 a required audit of the union financials revealed that several of the board members had been paid excessive amounts of money for work that was unverified. During the December 2012 Executive Board meeting, Martin outlined and proposed immediate changes that would modify the future payouts to reduce the expenses. Members of the Lauck Group, however, submitted allegedly false accusations and charges that plaintiffs were maliciously spreading false information, although plaintiffs contend the audit had clearly verified the information put forth in the December meeting, and, in any event, the information being revealed was not confidential and was public information available to all TWU Local members. Ultimately, Click and Lindemann were suspended, and charges were accepted against them for the accusations stemming from the December 2012 meeting. Their

---

[5]Plaintiffs contend that Don Shipman sent out a mass email encouraging other members to undermine the newly-elected officers and disrupt union affairs; members and supporters of the Lauck Group made it well known that they were going to do everything they could to get the Martin Group removed from office; Thompson submitted unfounded charges no fewer than five times simply to harass the Martin Group officers in an attempt to undermine the electoral system and disrupt the basic democratic structure by doing everything he could to remove them from office and have himself reinstated; and Lauck submitted charges against the Martin Group no fewer than four times simply to harass and undermine the electoral system and disrupt the union democratic infrastructure.

trials were set for May 15, 2013.

In March 2013 Click attended a rally in Washington, D.C. to protest a Transportation Security Administration change that would allow knives to pass through security checkpoints and on commercial aircraft. During this rally, Click carried a sign that read, "Ain't nobody got time for dat." *Id*. ¶ 28. Another member of TWU Local, who allegedly supported the Lauck Group, saw the sign and reported it to TWU Local. Charges of racial discrimination were then submitted against Click based on the allegation that the sign was offensive, and Click's trial was set for May 14, 2013.

Union rules and bylaws dictate that, when an officer is suspended or resigns, the officer's position can be filled by the member who finished second for the position at the prior election, if that member opts to accept the position. Consequently, when Click and Lindemann were suspended, their positions were filled by Stone and Parrott, members of the rival Lauck Group. Additionally, before the hearings set for May 14 and 15, Wann and Dalak resigned their positions, allegedly under pressure from the Lauck Group, and they were replaced by Nevarez and Thompson, from the Lauck Group.

On May 13, 2013—the day before Click's individual Article XIX[6] trial and two days before Click and Lindemann's joint Article XIX trial—the Executive Board attempted to delay the trial dates until May 22 and May 23 by insisting that Martin reschedule them.

---

[6]The TWU International Constitution is a publicly-available document. Because the contents of the Constitution are not in dispute, the court has consulted Articles XIX and XXI in deciding defendants' motion to dismiss.

Martin refused on the basis that doing so violated union rules. Click and Lindemann attended their trials on May 14 and 15, 2013 and were acquitted of all charges. The Executive Board members, however, now consisting of Stone, Thompson, Nevarez and Parrott, did not accept the trial committee's decision, and nullified it.

Click and Lindemann's Article XIX trials were rescheduled for the following week. Click requested a continuance on the basis that it was impossible for his witnesses to return for the new hearing on short notice and that his counsel was unavailable for a retrial, but the request was denied. Lindemann also sought a continuance based on the fact that he went on approved medical leave after his first trial, and, due to his medical leave, he would be physically unable to attend the rescheduled trial, but this request was also denied. The second trials were conducted in the absence of Click and Lindemann, and this time the trial committee found them both guilty.

Subsequently, Article XXI[7] trials for Click and Lindemann were held before Nevarez, assisted by Stone, Parrott, and Thompson. Nevarez removed Click and Lindemann from their positions and banned them from running for election for three years.

On May 14 the Executive Board suspended Martin from his position as President because of his refusal to reschedule the Click and Lindemann trials. On May 16, at an Executive Board meeting, the Executive Board charged Martin with violating union rules by, *inter alia*, making presentations to the members on issues surrounding TWU Local, making

---

[7]Under the TWU International Constitution, Article XXI details the procedures required for suspending local officers.

false representations to the membership, and standing in opposition to the TWU Local Executive Board. On May 29 and 30 Martin was tried before the TWU Local Executive Board, which then consisted of the Lauck Group members, who had replaced all of the Martin Group members on the Board. When Martin arrived for his Article XXI trial, he was informed that Article XIX procedures would be followed without the required trial committee of three members, and he was also advised that he could not have an advocate present. Martin allegedly presented his evidence amidst ridicule, interruption, and distraction by the Executive Board. The Executive Board found Martin guilty of all charges, and it voted to remove him from office and declare him ineligible for union office for a period of three years.

B

Martin, Click, and Lindemann brought this lawsuit against TWU Local, alleging that it had violated their rights under the Norris LaGuardia Act, 29 U.S.C. §§ 101-15, the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141-97, and the LMRDA, and that it had breached the TWU International Constitution. In *Martin I* the court dismissed plaintiffs' claim for breach of the TWU International Constitution under Rule 12(b)(1) for lack of subject matter. *Martin I*, 2014 WL 4358480, at *3. It dismissed under Rule 12(b)(6) plaintiffs' claims brought under 29 U.S.C. §§ 102, 401, 413, and 530 because these provisions do not expressly authorize a private cause of action, *Martin I*, 2014 WL 4358480, at *4; dismissed their claims under 29 U.S.C. §§ 431 and 501 because they failed to plead any factual allegations to state a claim for relief under either section, *Martin I*, 2014 WL

4358480, at *5; and dismissed their claims under 29 U.S.C. §§ 481 and 482 because, except in limited circumstances that they had not pleaded, only the Secretary of Labor can bring an action for a violation of § 481, *Martin I*, 2014 WL 4358480, at *5. Regarding plaintiffs' claims that TWU Local had violated 29 U.S.C. §§ 411, 412, and 529, the court held that plaintiffs had plausibly pleaded that Martin was denied a full and fair hearing, in violation of 29 U.S.C. § 411(a)(5)(C), when he was tried by a panel that included his accusers, but that they had otherwise failed to plausibly plead their claims under 29 U.S.C. §§ 411, 412, and 529. *Martin I*, 2014 WL 4358480, at *6-12. The court granted Martin, Click, and Lindemann leave to amend as to all claims that were curable by amendment, and they later filed their second amended complaint. *Id.* at *12.

TWU Local now moves to dismiss plaintiffs' second amended complaint under Rules 12(b)(1) and 12(b)(6). It contends that plaintiffs' status as union officers and their removal is the only focus of the second amended complaint, and that, for the reasons set forth in TWU Local's previous motions to dismiss and for the reasons set forth in *Martin I*, 2014 WL 4358480, plaintiffs' claims (other than Martin's claim that he was denied a full and fair hearing, in violation of 29 U.S.C. § 411(a)(5)(C)), should be dismissed. TWU Local also moves to strike plaintiffs' second amended complaint. Plaintiffs oppose both motions.

II

In deciding defendant's Rule 12(b)(6) motion, the court evaluates the sufficiency of plaintiffs' second amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort*

*Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendant's motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. ( quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555).

III

In their second amended complaint, plaintiffs allege that TWU Local violated §§ 411, 412, and 529 of the LMRDA.

A

Section 411 sets out the core of the guarantees afforded to members of labor organizations by the LMRDA. It constitutes a "[b]ill of [r]ights" that is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 536-37 (1984). The LMRDA contains two provisions that enable union members to enforce their rights under this "bill of rights": §§ 412 and 529.

Section 412 confers a private cause of action on union members for a union's infringement of the rights secured by §§ 411-15. To state a claim under § 412, plaintiffs must show (1) that they are members of a labor organization and (2) that the organization infringed a right secured by § 411, 412, 413, 414, or 415. *See Martinez v. Am. Fed'n of Gov't Emps.*, 980 F.2d 1039, 1041-42 (5th Cir. 1993). "Union leaders, *per se*, are not themselves a protected class under [the LMRDA], except that they, too, may not be deprived of the basic rights attending on union membership." *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1156 (5th Cir. 1984) ("*Adams-Lundy I*"). Thus it is generally insufficient for a plaintiff to plead a plausible claim under § 412 based only on the alleged infringement of a right held in the capacity of a union officer. *See id.*

- 10 -

There is an exception to this general rule. If a plaintiff can show that the removal from office "was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members," the plaintiff can state a claim for relief as an officer under § 412. *Id.* at 1159. To state a claim under this exception, a plaintiff must show "that the defendants are attempting to dismantle the union's electoral system, [or] that members opposing that faction are . . . suppressed or threatened with reprisals." *Id*. Allegations that merely suggest that an internal union struggle is "anti-democratic" are insufficient to plausibly allege the existence of a pattern of intimidation and stifled dissent. *Id*.

Section 529 provides members a private cause of action when their union fines, suspends, expels, "or otherwise discipline[s]" them for exercising any right to which they are entitled under the LMRDA. "The primary difference between § [529] and § [412] is that § [529] protects against retaliation for the exercise of any right secured under the LMRDA, whereas § [412] only protects rights secured under [§§ 411-15]." *United Steel Workers Local 12-369 v. United Steel Workers Int'l*, 728 F.3d 1107, 1115 (9th Cir. 2013) (citing *Finnegan v. Leu*, 456 U.S.431, 439 n.10 (1982)). Depending on the right the member seeks to protect, §§ 412 and 529 can be entirely duplicative. *See id.* at 1115 n.4 (citing *Finnegan*, 456 U.S. at 439 n.10). To state a claim under § 529, plaintiffs must show that (1) they are members of a labor organization; (2) the organization fined, suspended, expelled, or otherwise disciplined them; and (3) the organization imposed the punishment in retaliation for their exercise of a right protected by the LMRDA. *See* 29 U.S.C. § 529. As under § 412, to state

a claim under § 529, plaintiffs must allege that any punishment or restriction imposed by TWU Local was a limitation or restriction on their membership rights. Removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529. *See Finnegan*, 456 U.S. at 438 n.9, 439 (explaining that discipline referred to in §§ 411(a)(5) and 529 means limitations on membership rights, not removal from union office); *Adams-Lundy I*, 731 F.2d at 1157 (citing *Finnegan* for proposition that "§ [411(a)(5)] and § [529] protect only the rights of membership *per se*, and that a union officer who is removed from office but not deprived of membership in the union has suffered no loss cognizable as 'discipline' proscribed by these sections of the Act").

B

The court first considers plaintiffs' allegations under 29 U.S.C. § 411(a)(2), which provides, in pertinent part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings[.]

In *Martin I* the court held that plaintiffs' first amended complaint failed to plead factual content that would permit the court to draw the reasonable inference that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers*. *Martin I*, 2014 WL 4358480, at *7. In their second amended complaint, plaintiffs allege that, in October 2011, before he was elected 1st Vice President, Click attended four

- 12 -

separate membership meetings and voiced his opposition to Thompson's proposed Amendment, and that Thompson retaliated against Click by submitting unfounded charges that he violated membership rights by telling members how to vote on the Amendment, and, when Click was found not guilty of the charges, posted the results of the hearing on TWU Local's website. Plaintiffs also allege that charges of racial discrimination were brought against Click for his actions during the March 2013 rally in Washington, D.C., which Click attended "simply as a member of [TWU Local] voicing his opposition," and "not . . . in any official capacity as Vice-President." 2d. Am. Compl ¶ 28. Plaintiffs have therefore alleged that, on two occasions, in his capacity as a member of TWU Local, Click exercised rights secured by § 411(a)(2). Because TWU Local does not challenge plaintiffs' § 411(a)(2) claim on any basis other than the ones on which the court relied when dismissing the claim in *Martin I*, 2014 WL 4358480, at *7 (i.e., the failure to plead that TWU Local disciplined plaintiffs for exercising their rights to free speech *as members* rather than *as officers*), the court denies TWU Local's motion to dismiss this claim as to Click.[8]

---

[8]In denying TWU Local's motion as to plaintiffs' claims based on § 411(a)(2), the court does not suggest that plaintiffs have adequately pleaded all of the required elements of a § 412 or § 529 claim. But TWU Local does not challenge these claims on any bases other than (1) that the second amended complaint focuses only on "Plaintiffs' status as Union officers," D. Br. 3, and (2) for the reasons set forth in *Martin I*. And plaintiffs have cured the defects identified in *Martin I*, 2014 WL 4358480, at *7, at least as to plaintiff Click. Accordingly, the court does not consider whether plaintiffs' § 412 or § 529 claims based on TWU Local's alleged violation of Click's § 411(a)(2) rights are subject to dismissal on any other basis.

C

Plaintiffs allege that TWU Local violated the LMRDA by infringing their rights to a full and fair hearing. In its motion to dismiss, TWU Local contends that "Plaintiffs' Second Amended Complaint demonstrates at least as clearly as Plaintiffs' prior Complaints that Plaintiffs' status as Union officers and their removal is its only focus," and it moves to dismiss "[f]or these reasons, and the Court's reasoning in [*Martin I*]." D. Br. 3.

Section 411(a)(5)(C) provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been . . . (C) afforded a full and fair hearing." In *Martin I* the court considered whether plaintiffs had plausibly alleged that they had been "disciplined," as required by § 411(a)(5). The court explained:

> "[D]iscipline," as used in § 411(a)(5), refers to punitive actions diminishing membership rights. Plaintiffs allege that TWU Local disciplined them both by removing them from union office and banning them from holding any union office for three years. Removal from an elected office is not a form of "discipline" actionable under § 411(a)(5). Although the Fifth Circuit has not specifically held that being banned from holding union office is a form of discipline, it has stated in *dicta* that the right to run for office is a membership right. The court will therefore assume that a ban against running for union office is a form of discipline that is actionable under § 411(a)(5).

*Martin I*, 2014 WL 4358480, at *8 (citations and some internal quotation marks omitted). In their second amended complaint, plaintiffs allege that, after their trials, Click and Lindemann were banned from running for election for three years. Because they have alleged that they were disciplined in ways other than removal from office, the court disagrees

- 14 -

with TWU Local's contention that plaintiffs' "status as Union officers and their removal is [the] *only* focus" of the second amended complaint. D. Br. 3 (emphasis added). In *Martin I* the court assumed that a ban against running for union office is an actionable form of discipline under § 411(a)(5). In moving to dismiss, TWU Local has provided the court with no basis for why, nor does it even argue that, the court should take a different position with respect to the second amended complaint.

Defendants also move to dismiss based on the court's reasoning in *Martin I*. *Martin I*, however, addressed plaintiffs' amended complaint, in which they alleged that TWU Local deprived them of a full and fair hearing when

> (1) Plaintiffs Click and Lindemann were tried twice for the same offense; (2) Plaintiff[] Click was given less than a week to prepare for the second trials against him; (3) Plaintiff Lindemann was out on authorized medical leave during his second trial; (4) Plaintiff Martin was tried by the Executive Board under an alleged Article XXI hearing, which wrongfully followed Article XIX procedures, placing his accusers under the charges against him as his judges as well; [and] (5) Plaintiff Martin was not given the opportunity to have counsel for his trial as is recognized under an Article XIX proceeding.

Am. Compl. ¶ 70. In their second amended complaint, plaintiffs base their § 411(a)(5)(C) claim on a new set of factual allegations. They assert that TWU Local deprived them of a full and fair hearing when (1) Click's and Lindemann's May 14 and 15 trials were nullified without authority or justification; (2) the rescheduled hearings six days later did not afford Click and Lindemann a fair opportunity to attend; (3) the Article XIX retrials of Click and Lindemann were not fair and impartial because the Lauck Group members ensured that a

guilty verdict would be rendered and plaintiffs' guilt was prejudged; (4) and Martin, Click, and Lindemann all faced Article XXI trials in which they were tried by the Lauck Group board members. Because the court did not address these allegations in *Martin I* (on which TWU Local relies as a basis for dismissing the second amended complaint), and because TWU Local has failed to adequately brief its bases for moving to dismiss the new allegations in the second amended complaint, the court denies TWU Local's motion as to plaintiffs' claim that they were "disciplined," i.e., banned for three years from running for union office, without a full and fair hearing, as required under § 411(a)(5)(C).[9]

D

To the extent plaintiffs allege they were wrongfully removed from office in violation of the LMRDA, they have failed to state a plausible claim.

In *Adams-Lundy I* the Fifth Circuit addressed whether the LMRDA protected a group of elected officials who had been suspended by a minority faction of the union's governing board. *Adams-Lundy I*, 731 F.2d at 1156. The court concluded that, where plaintiffs suffer injury "in their status as officers, not in their status as individual members[,] [t]here has been no infringement of the basic rights of membership protected by §§ [411] and [412]." *Id.* at

---

[9]In denying TWU Local's motion as to plaintiffs' claim based on alleged violations of § 411(a)(5)(C), the court does not suggest that plaintiffs have adequately pleaded the basis for this claim or that TWU Local will not be able to successfully move for summary judgment on this claim.

1159.[10] The court noted, however, that there may be an exception to this rule:

> [s]ometimes, however, one group or faction within a union may become so entrenched and despotic that the democratic character of the union is threatened. When this happens, and when the dominant group strives to stifle dissent and efforts at reform within the union, the rights of union members to belong to an open democratic labor organization are infringed. As these are the core interests protected by the LMRDA, the Act does provide a remedy in such a case, even if the particular repressive action challenged is the removal from office of a political opponent of the dominant clique—an action not ordinarily comprehended by the terms of § [412].

*Id.* at 1158. The court thus concluded that the plaintiffs could only state a viable claim under § 412 if they "alleg[ed] and prov[ed] . . . that their suspension was part of a scheme to subvert the union's basic democratic structure or otherwise directly implicated rights of members," and that the plaintiffs had failed to do so in that case. *Id.* at 1159. Although the plaintiffs had "charge[d] that defendants' conduct was anti-democratic," there was "no claim or proof that the defendants were attempting to dismantle the union's electoral system, nor that members opposing that faction are in any fashion suppressed or threatened with reprisals." *Id.* "In other words, the injury done to the plaintiffs was done to them in their status as officers, not in their status as individual members." *Id.* Nor could the plaintiffs prevail based on a theory that the removal of an elected officer infringes in the membership's guaranteed right to elect its chosen representatives because "there [wa]s no allegation that the defendants

---

[10]Similarly, "removal from elected union office does not qualify as a suspension, expulsion, or other discipline under § 529." *Martin I*, 2014 WL 4358480, at *12 (citing *Finnegan*, 456 U.S. at 439 n.9).

pose any threat to the future conduct of free elections for union office." *Id.*

In the second amended complaint, plaintiffs repeatedly allege that members of the Lauck Group and their supporters engaged in a "systematic dismantling of the union's electoral system and democratic structure," 2d Am. Compl. ¶ 17, and that they "set out to undermine and stifle the union's basic democratic structure, and dismantle the union's electoral system that put the Martin Group in office," *id.* at ¶ 58; *see also id.* at ¶¶ 18, 20, 21, 25, 29, 31 51, 59, 65, 67, 71, and 76. Plaintiffs have failed to plausibly allege any facts, however, in support of their conclusory assertions. They do not plausibly allege that the Lauck Group engaged in any acts that would "stifle dissent and efforts at reform within the union," *Adams-Lundy I*, 731 F.2d at 1158; that they infringed the "rights of union members to belong to an open democratic labor organization," *id.*; or that the Lauck Group "po[ses] any threat to the future conduct of free elections for union office," *id.* at 1159. At most, they allege only that the Lauck Group engaged in efforts to have *them* removed from office, which is precisely the type of "political in-fighting [and] factionalism within a union [that] implicates no rights safeguarded by the LMRDA." *Id.* at 1158. Accordingly, to the extent plaintiffs allege that TWU Local violated the LMRDA by wrongfully suspending them and removing them from office, TWU Local is entitled to dismissal of plaintiffs' claims under 29 U.S.C. § 411, 412, and 529.[11]

---

[11]Although TWU Local entitles its motion "defendant's motion to dismiss plaintiffs' amended complaint pursuant to F.R.C.P. Rules 12(b)(1) and 12(b)(6)," it is unclear whether TWU Local is seeking a dismissal based on plaintiffs' failure to plausibly allege a claim under the LMRDA or instead seeks dismissal based on an alleged lack of subject matter

IV

TWU Local moves to strike plaintiffs' second amended complaint, contending they have repeatedly violated the local counsel requirement of N.D. Tex. Civ. R. 83.10. Because plaintiffs have now designated local counsel, TWU Local's motion to strike is denied.

TWU Local also moves to strike ¶¶ 78-83 of plaintiffs' second amended complaint (in which they request a preliminary injunction) based on the court's orders. Plaintiffs respond that this part of TWU Local's motion is moot because the court has already statistically terminated the preliminary injunction request. The court declines to strike a pleaded request for a remedy absent a basis, such as under the standard that governs Rule 12(b)(6) and Rule 12(c) motions, to conclude that plaintiffs have not plausibly shown entitlement to the remedy. Because such a conclusion is unfounded on the present record, the court denies the motion to strike in this respect.

---

jurisdiction. The court concludes on the present briefing that TWU Local's motion should be decided as a Rule 12(b)(6) motion.

* * *

For the foregoing reasons, the court grants in part and denies in part TWU Local's Rule 12(b)(6) motion to dismiss plaintiffs' second amended complaint, and it denies TWU Local's motion to strike.

**SO ORDERED**.

February 11, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE